# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CHARLES REMBERT, (#B79837), )
                                 )
            Petitioner, )
                                 )   Case No. 16 C 4049
        v. )
                                 )
VICTOR CALLOWAY, Acting Warden )
Danville Correctional Center, )
                                 )
            Respondent. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Charles Rembert's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Petitioner's habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

When considering habeas petitions, federal courts must presume the factual findings made by the last state court to decide the case on the merits are correct unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Miller v. Zatecky*, 820 F.3d 275, 280 (7th Cir. 2016). Because Petitioner has not provided clear and convincing evidence to rebut this presumption, the following factual background is based on the Illinois Appellate Court's findings in *People v. Rembert,* No. 1-13-1220, 2015 WL 1441879 (Ill. App. Ct. Mar. 27, 2015), *appeal denied,* 39 N.E.3d 1009 (Ill. 2015), *and cert. denied sub nom. Rembert v. Illinois,* 136 S. Ct. 831 (2016).

## I. Factual Background

Petitioner was charged with burglary in connection with an August 17, 2011 incident that occurred at J.B. Metals, a metal scrapping and recycling company located at 2910 West Carroll Avenue in Chicago, Illinois. At Petitioner's jury trial, Gene Eydelman, a security manager at J.B. Metals, testified that the company has a 24–hour surveillance system with 12 cameras that stamp the date and time of the video recordings. When Eydelman arrived at work on the morning of August 17, 2011, several employees told him that someone had used a sledgehammer to create a hole in the building and had stolen some copper pipes. Thereafter, Eydelman called the police and then viewed the security footage. Eydelman testified that while viewing the surveillance video, he observed two men enter the building and walk back and forth through a hole in the wall. He also testified that the two men were carrying bags. Further, Eydelman stated that he saw video of a Dodge Intrepid with a broken rear window parked outside the building and identified Petitioner as one of the men on the video who had been inside the building. He also testified that about 300 to 400 pounds of copper pipe, worth approximately $1,000, had been removed from J.B. Metals.

Jacob Eydelman, the owner of J.B. Metals, testified at Petitioner's trial stating that when he arrived at work on August 17, 2011, he noticed a hole in the side of the building. He also viewed the security footage and identified Petitioner as one of the men shown in the video using a sledgehammer to break a hole into the side of the building. Ricky Davis, a J.B. Metals' employee, also testified at Petitioner's trial stating that when he viewed the security footage from August 17, 2011, he recognized Petitioner as someone who had visited the company a few days before the burglary. Davis further testified that when he had seen Petitioner, Petitioner was

driving a two-tone green and white Dodge Intrepid with a broken rear window, which was the same vehicle shown in the security video. Moreover, Davis testified that on the afternoon of August 25, 2011, Petitioner drove into the lot of J.B. Metals in the two-tone Dodge Intrepid with a newly repaired rear windshield, at which time Davis recognized Petitioner as the man he had seen on the security footage. Once recognized, Petitioner fled the parking lot on foot and Davis chased him onto the street where he saw two police officers, Chicago Police Officers Carrilo and Challis. Officers Carrilo and Challis eventually detained Petitioner a few blocks from J.B. Metals.

Chicago Police Detective Rose testified at trial that he arrested Petitioner and transported him to J.B. Metals for identification. While there, Detective Rose observed Petitioner's car parked in the lot. Police transported the car to Area Four headquarters where Detective Rose examined the vehicle and discovered small pieces of glass scattered in the trunk, and two large bags, one of which contained small pieces of copper pipe.

Petitioner testified at his trial stating that he did not break into J.B. Metals on August 17, 2011, and that he had had never been to the business prior to August 25, 2011. Petitioner further stated that on August 25, 2011, he drove a two-toned Dodge Intrepid to J.B. Metals seeking to sell a broken copy machine. He explained that the car belonged to a friend and did not contain any bags in the trunk. Petitioner testified that he believed that Detective Rose planted the bags in the trunk once the car was transported to Area Four headquarters.

II. **Procedural Background**

Following his jury trial, Petitioner was convicted of burglary and sentenced to 18 years imprisonment, along with three years of mandatory supervised release. The Circuit Court considered Petitioner's prior convictions when sentencing him to 18 years. Also, the Circuit

Court assessed certain fines and fees, including a $5 court system fee. In his appeal from that judgment, Petitioner argued that the Circuit Court abused its discretion in sentencing him to 18 years and incorrectly assessed a $5 court system fee. On March 27, 2015, the Illinois Appellate Court vacated the fee, but affirmed the Circuit Court judgment in all other respects. The Supreme Court of Illinois denied Petitioner's leave to appeal on September 30, 2015.

In February 2016, Petitioner filed a pro se post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook County. On March 17, 2016, the Circuit Court denied the post-conviction petition. Petitioner did not appeal the Circuit Court's denial of his post-conviction petition. In his reply brief supporting his habeas petition, Petitioner explains that he did not appeal this denial because he did not think he would get relief. (R. 21, Reply Brief, at 3.)

### III. Habeas Petition

On April 4, 2016, Petitioner filed the present pro se petition for a writ of habeas corpus. Construing Petitioner's pro se allegations liberally, *see Carter v. Duncan,* 819 F.3d 931, 941 (7th Cir. 2016), he asserts that: (1) his 18-year sentence violates the purpose and spirit of Illinois law and that the trial court abused its discretion in sentencing him to 18 years; (2) the State violated due process at sentencing by lying to the trial court about Petitioner being on parole at the time of the burglary; and (3) he was denied a speedy trial in violation of the Sixth Amendment.

## LEGAL STANDARDS

### I. Habeas Relief

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable

4

application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Pinno v. Wachtendorf*, 845 F.3d 328, 331 (7th Cir. 2017). The Supreme Court has explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405. Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. In sum, "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

## II. Exhaustion and Procedural Default

"A federal habeas corpus petitioner is required to exhaust his available state remedies before seeking federal relief." *Lisle v. Pierce,* 832 F.3d 778, 785 (7th Cir. 2016) (citing 28 U.S.C. § 2254(b)(1)(A)). "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, is the duty to fairly present his federal claims to the state courts." *King v. Pfister,* 834 F.3d 808, 815 (7th Cir. 2016) (citation omitted). More specifically, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *King,* 834 F.3d at 815. If a habeas petitioner fails to fully and fairly present his federal claims through one full round of

state court review, he has procedurally defaulted his claims. *See King,* 834 F.3d at 815. Procedural default precludes federal habeas courts from reviewing the merits of a petitioner's habeas claims. *See Thomas v. Williams,* 822 F.3d 378, 384 (7th Cir. 2016)

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Johnson v. Foster,* 786 F.3d 501, 505 (7th Cir. 2015). Prejudice means actual prejudice infecting the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496; *see also Jones v. Calloway,* 842 F.3d 454, 461 (7th Cir. 2016).

## ANALYSIS

### I. Non-Cognizable Claim

In his first habeas claim, Petitioner maintains that his 18-year sentence violates Illinois law and that the trial court abused its discretion when sentencing him to 18 years in prison. As the Seventh Circuit teaches, "[t]he remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the

petitioner of a right under federal law can the federal court intervene." *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004); *see also Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("habeas corpus relief does not lie for errors of state law."). Simply put, "[f]ederal habeas corpus relief is not available to correct perceived errors of state law." *Crockett v. Butler*, 807 F.3d 160, 168 (7th Cir. 2015); *see also King*, 834 F.3d at 814 ("It is well-established that on habeas review, a federal court cannot disagree with a state court's resolution of an issue of state law.")

Here, Petitioner challenges his sentence under Illinois law and argues that the Circuit Court abused its discretion in sentencing him. These arguments focus on the sentencing court's violation of state – not federal – law. *See Wilson v. Corcoran,* 562 U.S. 1, 5, 131 S.Ct. 13, 178 L.Ed.2d 276 (2010) ("it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts") (emphasis in original). As such, Petitioner's first claim is not cognizable on habeas review. *See Perruquet,* 390 F.3d at 511 ("To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim 'presents no federal issue at all.'") (citation omitted). The Court therefore denies Petitioner's first habeas claim.

## II. Procedurally Defaulted Claims

Next, Petitioner argues that the State violated due process at sentencing by lying to the trial court about Petitioner being on parole at the time of the burglary and that he was denied a speedy trial in violation of the Sixth Amendment. Respondent argues that because Petitioner did not fully and fairly present these constitutional claims through one full round of state court review, these claims are procedurally defaulted. *See Boerckel,* 526 U.S. at 848; *King,* 834 F.3d

7

at 815.

As to his due process claim, although Petitioner argued that the State lied at sentencing in his pro se petition for leave to appeal to the Supreme Court of Illinois, Petitioner did not frame this argument as a due process claim. *See McKinley v. Butler,* 809 F.3d 908, 909 (7th Cir. 2016) ("To be allowed to press his claim in this court, however, he had to have pressed it in the state judicial system first, § 2254(b)(1)(A) and have made clear that it was indeed a federal constitutional claim that he was pressing"). Equally important, Petitioner did not bring this claim to the Illinois Appellate Court on direct appeal, and thus he did not present this argument to one full round of state court review. *See Clemons v. Pfister,* 845 F.3d 816, 819 (7th Cir. 2017). Petitioner does not argue that the fundamental miscarriage of justice exception applies to this defaulted claim nor does he argue that cause and prejudice exist to except his procedural default. *See House,* 547 U.S. at 536; *Murray,* 477 U.S. at 492-96.

As to Petitioner's Sixth Amendment speedy trial claim, he contends that he did not raise this issue on direct appeal to the Illinois Court of Appeals because his lawyer did not raise this issue. Construing his pro se habeas petition liberally, *see Carter,* 819 F.3d at 941, it appears that Petitioner is arguing that his appellate counsel's ineffective assistance of counsel was the cause of Petitioner's procedurally default. To use the independent constitutional claim of ineffective assistance of appellate counsel as cause to excuse a procedural default, Petitioner was required to raise this ineffective assistance of counsel claim through one full round of state court review, which he failed to do. *See Richardson v. Lemke,* 745 F.3d 258, 272 (7th Cir. 2014); *Gray v. Hardy,* 598 F.3d 324, 330 (7th Cir. 2010). Because Petitioner has procedurally defaulted his Sixth Amendment claim, the Court cannot reach its merits. *See Thomas,* 822 F.3d at 384.

## III.     Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present ruling.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Flores-Ramirez v. Foster,* 811 F.3d 861, 865 (7th Cir. 2016) (per curiam). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; 28 U.S.C. § 2253(c)(2). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). In cases where a district court denies a habeas claim on procedural grounds, a certificate of appealability should issue only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

Here, Petitioner has not established that reasonable jurists would debate that his claim based on Illinois law was not cognizable on habeas review. *See Estelle,* 502 U.S. at 67. In

9

addition, a reasonable jurist would not conclude the Court erred in ruling that Petitioner had procedurally defaulted his due process and Sixth Amendment claims. *See Slack,* 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case," the claim is not debatable). As such, the Court declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Petitioner's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:** February 27, 2017

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**